**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-01956-NYW-KAS

LASERMARX, INC., d/b/a QUALITY ARCHERY DESIGNS, INC., and
QTM, LLC,

      Plaintiffs,

v.

HAMSKEA ARCHERY SOLUTIONS LLC,

      Defendant.

---

## ORDER ON CLAIM CONSTRUCTION

---

This matter comes before the Court on the Parties' Joint Motion for Determination of Claim Construction. [Doc. 64, filed August 2, 2023]. Having reviewed and considered the Parties' claim construction briefs, [Doc. 61; Doc. 62; Doc. 63], the applicable case law, and the arguments offered at the October 11, 2023, Claim Construction (or "*Markman*") Hearing, [Doc. 70], the Court construes the disputed claims as set forth below.

## BACKGROUND

### I.     Procedural Background

The factual background of this action has been discussed in the Court's previous rulings, *see, e.g.*, [Doc. 69 at 2], and thus, this discussion will focus upon the claim construction issues before the Court. As relevant here, Plaintiff Lasermarx, Inc., d/b/a Quality Archery Designs, Inc., is the exclusive licensee of two patents owned by Plaintiff QTM, LLC (together, "Plaintiffs" or "QAD"): (1) U.S. Patent No. 11,098,974 ("the '974

Patent"), and (2) U.S. Patent No. 11,359,884 ("the '884 Patent" and with the '974 Patent, the "Original Patents-in-Suit").  [Doc. 80 at ¶¶ 1, 12].  While the Original Patents-in-Suit share an inventor, Daniel A. Summers, they are not related to each other.  *See* [Doc. 80-1 at 2; Doc. 80-2 at 2].  While not related, these Original Patents-in-Suit are generally directed at archery bows, their accessories, and associated devices, such as mounting devices.

Defendant Hamskea Archery Solutions LLC ("Defendant" or "Hamskea") is one of Plaintiffs' competitors in manufacturing and selling archery accessories.  [Doc. 80 at ¶ 45].  After licensing discussions failed between Plaintiffs and Hamskea, [*id.* at ¶¶ 32–35], Plaintiffs filed this action on August 5, 2022, [Doc. 1].  The First Amended Complaint contained two causes of action for patent infringement and alleged infringement of (1) at least Claims 11 and 13 of the '974 Patent, and (2) at least Claims 12, 16, and 17 of the '884 Patent.[1]  [Doc. 24 at ¶¶ 42, 51].  Plaintiffs sought a finding of infringement, compensatory damages, permanent injunctive relief, enhanced damages, and attorneys' fees, among other forms of relief.  [*Id.* at 30].  Defendant then filed a Motion for Dismissal and Summary Judgment of Invalidity and Non-Infring[e]ment, [Doc. 28], and an associated Motion to Strike, [Doc. 53], which this Court denied without prejudice and granted in part and denied in part, respectively, in its Memorandum Opinion and Order dated September 28, 2023, [Doc. 69].

Hamskea filed its Answer, Affirmative Defenses and Counterclaims in Response

---

[1] Plaintiffs' Initial Infringement Contentions identify additional Asserted Claims 1, 3, 4, 5, 6, 7, 8, 9, 12, 14, 15, 16, 19, and 20 of the '974 Patent and additional Asserted Claims 1, 2, 3, 5, 6, and 7 of the '884 Patent.  [Doc. 46-2]; *see also* [Doc. 80 at ¶¶ 49, 58].  This Court declined to strike these additional asserted claims in conjunction with denying Defendant's Motion for Summary Judgment.  [Doc. 69 at 8].

to Plaintiffs' First Amended Complaint on October 13, 2023.  [Doc. 71].  As part of its counterclaims, Defendant sought a declaratory judgment of non-infringement and invalidity with respect to a third patent, U.S. Patent No. 11,692,788 ("the '788 Patent"), which is a continuation of the '884 Patent.  [*Id.* at 14–16; Doc. 71-1 at 2].  Hamskea amended its pleading on December 1, 2023, [Doc. 75], and Plaintiffs moved to dismiss some of the counterclaims, [Doc. 77].

Since the inception of this case, additional patents issued that were assigned to QAD.  The Parties met and conferred, and this Court then granted the Parties' Joint Motion to Amend, [Doc. 78], to address claims and defenses associated with those additional patents, [Doc. 79].  Plaintiffs filed the operative Second Amended Complaint on January 9, 2024.  [Doc. 80].  In the Second Amended Complaint, Plaintiffs allege that Defendant infringes not only the Original Patents-in-Suit and the '788 Patent, but also U.S. Patent No. 11,821,707 ("the '707 Patent") and U.S. Patent No. 11,835,317, which is a continuation of the '974 Patent ("the '317 Patent" and, with the Original Patents-in-Suit and the '788 Patent, the "Patents-in-Suit").  [*Id.* at ¶ 1].  On January 23, 2024, Defendant filed its Answer, Affirmative Defenses and Counterclaims in Response to Plaintiff's Second Amended Complaint.  [Doc. 83].  QAD has since moved to dismiss Defendant's counterclaims for common law unfair competition, tortious interference with business relations, and patent misuse.  [Doc. 87].

Given the introduction of these new patents, and the Parties' request for an amended schedule, this Court convened a Status Conference on January 16, 2024.  [Doc. 82].  At that Status Conference, the Parties represented to the Court that it could proceed with the claim construction briefing as it stood, but there might be additional claim

construction issues in the future.  Thus, in this Order on Claim Construction, the Court focuses solely on the Original Patents-in-Suit and the asserted claims therein.

## II.   Original Patents-in-Suit and Asserted Claims

### A.   The '974 Patent[2]

The '974 Patent derives from, and is a continuation of, Provisional Application No. 62/209,519, filed on August 25, 2015; Application No. 15/247,456, filed on August 25, 2016, which matured into U.S. Patent No. 9,829,270; and the progeny continuation applications of the latter.  [Doc. 80-1 at 2].  The '974 Patent issued on August 24, 2021, and names Daniel A. Summers as the inventor.  [*Id.*].  The Background section of the specification describes how the prior-art methods of attaching accessories, such as arrow rests and sights, to archery bows have several disadvantages, including but not limited to unexpected detachment, unintentional misalignment of the archery accessories during transport, and dynamic factors arising from unstable attachments that impede a user's ability to fine tune the bow to achieve repeatable, optimal shooting performance.  [*Id.* at col. 1:25–67].[3]  The inventions claimed in the '974 Patent pertain to archery devices that attach a bow accessory to an archery bow in a manner that avoids these disadvantages by including, *inter alia*, a portion with a "dovetail shape."  [*Id.* at 2, col. 2:7–10].

Asserted independent Claim 1 of the '974 Patent discloses:

An archery device usable with a bow accessory, the archery device comprising:

---

[2] The '974 Patent was originally filed on the docket in this matter as [Doc. 1-1].  This Court uses [Doc. 80-1] to refer to the '974 Patent now that the operative pleading is the Second Amended Complaint to maintain consistency in the record going forward.

[3] In citing to a Patent-in-Suit, the Court cites to the document number generated by the Court's CM/ECF filing system, but the column and line numbers, or claim numbers, assigned by the Patent-in-Suit.

a first portion configured to at least partially face in a forward direction toward an archery target;

a second portion configured to at least partially face in a rearward direction away from the archery target, wherein the second portion comprises:

a dovetail shape; and

a protrusion configured to at least partially fit into a space defined by the bow accessory, wherein:

the protrusion extends along a first vertical plane when the archery device is vertically oriented; and

the protrusion is configured to mate with bow accessory to enable a vertical movement of the bow accessory relative to the archery device; and

a third portion extending along a second vertical plane when the archery device is vertically oriented, wherein:

the second vertical plane intersects with the first vertical plane; and

the third portion defines an opening configured to receive a fastener so as to enable the fastener to extend along a lateral axis that intersects with the second vertical plane.

[*Id.* at Cl. 1].   Asserted Claims 3, 4, 5, 6, 7, and 8 of the '974 Patent depend from

independent Claim 1.  Asserted independent Claim 9 of the '974 Patent discloses:

An archery device usable with a bow accessory, the archery device comprising:

a first portion configured to at least partially face in a forward direction toward an archery target;

a second portion configured to at least partially face in a rearward direction away from the archery target, wherein:

the second portion at least partially comprises a dovetail shape; and

the second portion comprises a protrusion configured to at least partially fit into a space defined by the bow accessory, wherein:

the protrusion extends along a first vertical plane when the archer, device is vertically oriented; and

the protrusion is configured to mate with the bow accessory to enable a vertical movement of the bow accessory relative to the archery device; and

a third portion extending along a second vertical plane when the archery device is vertically oriented, wherein:

the second vertical plane intersects with the first vertical plane; and

the third portion defines an opening configured to receive a fastener so as to enable the fastener to extend along lateral axis that intersects with the second vertical plane.

[*Id.* at Cl. 9].

Asserted independent Claim 11 of the '974 Patent discloses:

An archery device usable with a bow accessory, the archery device comprising:

a first portion configured to at least partially face in a forward direction toward an archery target; and
a second portion configured to at least partially face in a rearward direction away, from the archery target, wherein:
the second portion at least partially comprises a dovetail shape; and
the second portion comprises a protrusion configured to at least partially fit into a space defined by the bow accessory;
the second portion comprises a first right edge, a first left edge, a second right edge, and a second left edge;
the first right edge and the second right edge define a right slot;
the first left edge and the second left edge define a left slot;
the first right edge and the first left edge are separated by a first distance; and
the second right edge and the second left edge are separated by a second distance that differs from the first distance.

[*Id.* at Cl. 11].  Asserted Claims 12, 13, 14, 15, and 16 depend from independent Claim 11.  Asserted Claims 19 and 20 are method claims.

## B.    The '884 Patent[4]

The '884 Patent was filed November 9, 2020, and issued on June 14, 2022.  [Doc. 80-2 at 2].  There are three named inventors:  Daniel A. Summers, Kevin S. Fry, and Jonathan M. Loomis.  [*Id.*].  Like the '974 Patent, it is directed at archery devices and methods, specifically archery coupling assemblies and methods for manufacturing an archery coupling assembly.  [*Id.*].  Unlike the '974 Patent, however, Asserted Claims 1, 2, 3, 5, 6, and 7 of the '884 Patent are not limited to a dovetail shape.

Asserted independent Claim 1 discloses:

---

[4] The '884 Patent was originally filed on the docket in this matter as [Doc. 1-2].  This Court uses [Doc. 80-2] to refer to the '884 Patent now that the operative pleading is the Second Amended Complaint to maintain consistency in the record going forward.

An archery coupling assembly comprising:

a mounting portion configured to be coupled to a riser of an archery bow, wherein the mounting portion is configured to be positioned in a vertical position in which the mounting portion extends along a vertical axis; and
a device moveably coupled to the mounting portion, wherein the device comprises:
a support portion configured to support an archery accessory;
a first engager configured to engage a first part of the mounting portion; and
a second engager configured to engage a second part of the mounting portion,
wherein the first and second engagers are arranged to compress a section of the mounting portion located between the first and second engagers,
wherein the device is configured to be moved along the vertical axis relative to the mounting portion while the device is coupled to the mounting portion positioned in the vertical position,
wherein, when the device is coupled to the mounting portion, the mounting portion is coupled to the riser, and the support portion supports the archery accessory, the archery accessory moves relative to the riser along the vertical axis in response to a movement of the device relative to the mounting portion.

[*Id.* at Cl. 1].  Asserted Claims 2, 3, 5, 6, and 7 all depend from independent Claim 1.

Asserted independent Claim 12 discloses:

An archery coupling assembly comprising:

a mounting portion configured to be coupled to a body of an archery bow, wherein the mounting portion, when vertically oriented, extends at least partially along a vertical axis; and
a device moveably coupled to the mounting portion, wherein the device comprises:
a first engager configured to engage a first part of the mounting portion; and
a second engager configured to engage a second part of the mounting portion,
wherein the first and second engagers are arranged to at least partially compress the mounting portion,
wherein the device is configured to be moved, along the vertical axis, relative to the mounting portion when the device is coupled to the mounting portion.

[*Id.* at Cl. 12].  Asserted Claims 16 and 17 depend from independent Claim 12.

### III.    Claim Construction Proceedings

On May 8, 2023, the Parties filed their Joint Chart of Disputed Claim Terms, identifying fourteen terms and/or phrases across the Original Patents-in-Suit for construction.  [Doc. 60].  Defendant then filed its Opening Claim Construction Brief, [Doc. 61]; Plaintiffs filed a Response, [Doc. 62]; and Defendant filed a Reply, [Doc. 63].   On August 2, 2023, the Parties filed a Joint Motion for Determination of Claim Construction, [Doc. 64], and on October 11, 2023, the Parties appeared before this Court for a Claim Construction Hearing, [Doc. 70].   During the hearing, the Parties agreed that the Court does not need to construe the term "archery device" from the '974 Patent, or the terms "mounting portion" and "device" from the '884 Patent.   *See* [*id.*].   Thus, this Court does not pass on those terms in this Order.

### LEGAL STANDARD

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court."  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *see also id.* at 384 ("The two elements of a simple patent case [are] construing the patent and determining whether infringement occurred . . . .   The first is a question of law, to be determined by the court, [and] [t]he second is a question of fact, to be submitted to a jury." (footnote and quotation omitted)).   "The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quotation and alteration omitted).   "In construing patent claims, courts are guided by the precedent of the Federal Circuit."  *Frac Shack Inc. v. Fuel Automation Station, LLC*, 300 F. Supp. 3d 1333, 1338 (D. Colo. 2018) (citing *SunTiger, Inc. v. Sci. Rsch. Funding Grp.*, 189 F.3d 1327, 1333 (Fed. Cir. 1999)).

When construing the words of a claim, courts are to give those words their ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). Indeed, courts "indulge a heavy presumption that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (quotation omitted). In certain circumstances, the plain and ordinary meaning will control and a court need not expressly construe a term. This is true even if the Parties disagree as to the plain and ordinary meaning, because courts determine the "plain and ordinary meaning" of a patent term not by stipulation of the parties but by what a person of ordinary skill in the art at the time of the invention would understand the term to mean. *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1272 (Fed. Cir. 2016) (citing *Phillips*, 415 F.3d at 1313). And courts should consider this meaning "in the context of the entire patent, including the specification" of which the claims are a part. *See Trs. of Columbia Univ. in City of N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016) (quotation omitted). This is because the specification provides the "best guide" as to the meaning of a disputed term, although a court will not "import limitations from the specification into the claims." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007) (quotation omitted). Exceptions to this rule apply when (1) "a patentee sets out a definition and acts as his own lexicographer" or (2) "the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

Courts may employ intrinsic as well as extrinsic evidence when construing patent claims. Intrinsic evidence includes the patent, its claims, its specifications, and, if available, its prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576,

1582 (Fed. Cir. 1996).  Intrinsic evidence "is the most significant source of the legally operative meaning of disputed claim language."  *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1372 (Fed. Cir. 2001) (quotation omitted).  Under certain circumstances, courts may utilize extrinsic evidence, including expert and inventor testimony, dictionaries, and treatises.  *See Takeda Pharm. Co. Ltd. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1363 (Fed. Cir. 2014).  But "while extrinsic evidence can shed useful light on the relevant art, . . . it is less significant than the intrinsic record in determining the legally operative meaning of claim language."  *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1397 (Fed. Cir. 2008) (quotation omitted).

Finally, a court construes claims without regard to the accused device.  *See Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1333 (Fed. Cir. 2000).  Accordingly, to the extent that the Parties have made arguments about whether certain elements of the relevant claims are found within any device offered by Plaintiffs or Defendant, or sought to use any such device as a demonstrative (such as during oral argument), this Court disregards such arguments.

## ANALYSIS

### I.    Person of Ordinary Skill in the Art

"Ordinary skill in the art" is defined as "the level of technical knowledge, experience, and expertise possessed by a typical engineer, scientist, designer, etc. in a technology that is relevant to an invention."  *See Seed Rsch. Equip. Sols., LLC v. Gary W. Clem, Inc.*, No. 6:09-cv-01282-EFM-KGG, 2011 WL 5024351, at *1 n.1 (D. Kan. Oct. 20, 2011) (quotation omitted).  Defendant defines a person of ordinary skill in the art as "someone with several (*e.g.*, three) years of experience researching, designing and/or

developing handheld projectile weaponry." [Doc. 61 at 5]. Plaintiffs, however, argue that they may "reserve[] resolution of the level of skill in the art for any validity analysis." [Doc. 62 at 10]. During the Claim Construction Hearing, Plaintiffs identified their primary objection to Defendant's proposed definition of a person of ordinary skill in the art as directed at the field, i.e., that it should be a person familiar with the archery industry, and not simply the projectile industry. Neither side provided the Court with any information with regard to the inventors' level of experience or qualifications.

Courts have noted that before claims can be construed, the level of ordinary skill in the art must be determined; indeed, the United States Court of Appeals for the Federal Circuit has remanded cases for not properly and fully evaluating and considering the level of ordinary skill in the art during claim construction. *See* 1 Annotated Patent Digest § 3:41.100 (collecting cases). In reviewing the Original Patents-in-Suit and their associated prosecution histories, this Court notes that there is no reference, in either the specification or prosecution history, to any handheld projectile weapon other than an archery bow. And while counsel for Defendant argued at the Claim Construction Hearing that it would not surprise him if there were one or two prior art references that were not directed only to archery devices, he conceded that he had not reviewed every prior art reference. This Court has briefly reviewed each of the United States Patent prior art references identified in the Original Patents-in-Suit, and has found that all are directed to applications associated with archery bows and accessories. *See* [Doc. 80-1; Doc. 80-2]. Accordingly, this Court finds that a person of ordinary skill in the art is defined as an individual who has at least three years of experience researching, designing, and/or developing archery bows and accessories.

## II.     Claim Terms

In construing the disputed claim terms, this Court generally follows the order set forth in the Joint Chart of Disputed Claim Terms, [Doc. 60], rather than the order set forth in the briefing by the Parties.

### A.     The '974 Patent

#### 1.     "accessory"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| An archery accessory such as an archery rest that is attached to or coupled with the second or rear portion of the archery device | Plain and ordinary meaning | **Plain and ordinary meaning** |

The term "accessory" appears in Claims 1, 8, 9, 11, 16, 17, 18 and 19 of the '974 Patent.  *See* [*id.* at 7].  While Hamskea advocates for the plain and ordinary meaning of "accessory," QAD urges this Court to adopt a construction that requires the accessory to be attached to or coupled with the rear portion of the archery device.  *Compare* [Doc. 61 at 21–22], *with* [Doc. 62 at 25–26].  Plaintiffs concede that the Parties are "not far apart," as the terms "accessory," and "archery accessory" are well known in the archery industry and to a person of ordinary skill in the art.  [Doc. 62 at 25].  Instead, Plaintiffs argue that their proposed construction is "simply an effort to shorten what could be a lengthy and unlimited list of possible archery accessories."  [*Id.* at 26].

This Court respectfully disagrees with QAD that it is appropriate to limit the list of possible accessories either by type or by placement relative to the archery device. Indeed, the portion of the specification upon which Plaintiffs rely utilizes the non-limiting phrase "including but not limited to," rather than limiting the term "accessory" to

specifically identified accessories:   "[t]he accessory **106** can be <u>any suitable type of</u> <u>accessory, including, but not limited to</u>, an arrow rest or arrow holder configured to support an arrow, a sight device configured to aid in aiming, a light holder configured to support a light source, a flashlight, a power cable guide, a vibration dampener or other shooting aids or bow attachments."   [*Id.* (quoting [Doc. 80-1 at col. 3:15–21]) (emphasis added)]; *see also Taro Pharm. Indus. Ltd. v. Novitium Pharma, LLC*, No. 3:19-cv-01028-FLW-LHG, 2020 WL 1673045, at *8 (D.N.J. Apr. 6, 2020) (construing the phrase "including but not limited to" as non-limiting claim language).

Further, any express or implied suggestion that an "accessory" would be limited to an archery rest, or to accessories akin to an archery rest, is belied by the use of "arrow rest accessory" within dependent Claims 8 and 16.  The doctrine of claim differentiation teaches that a limitation found within a dependent claim generally should not be read into an independent claim—in this case, through the construction of the term "accessory." *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (discussing the doctrine of claim differentiation).  Even if it was appropriate to somehow limit the list of possible archery accessories—which it is not—there is no support to use "archery rest" as the defining example, particularly where "arrow rest" is used in dependent Claims 8 and 16 alongside the word "comprises," which is well-known to be non-limiting in patent vernacular.  *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001) (observing that "[w]hen a patent claim uses the word 'comprising' as its transitional phrase, the use of 'comprising' creates a presumption that the body of the claim is open").

Moreover, nothing inherent in the term "accessory" requires it to be attached to or coupled with the second or rear portion of the archery device.   Instead, additional limitations within each of the asserted claims describe the configuration and spatial relationship between the claimed archery device, the "accessory," and the archery target. *See, e.g.*, [Doc. 80-1 at Cl. 1].  To infuse the lone term "accessory" with additional claim limitations would impermissibly render other specific claim language superfluous.  *See Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (observing that "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so").  Nor is there anything within the specification that suggests that the term "accessory" is understood by individuals of ordinary skill in the art to necessarily involve attachment or coupling to the second or rear portion of an archery device.  Indeed, the Background section of the specification expressly states that "[d]ifferent ways have been used to attach accessories, such as arrow rests and sights, to archery bows.  In one way, a known arrow rest is screwed onto the bow riser using a screw inserted in a preexisting hole through <u>the side of the bow</u>."  [Doc. 80-1 at col. 1:25–29 (emphasis added)].  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  Applying these standards and considering the term in the context of the claim language and specification, as well as in light of Plaintiffs' concession that the terms "accessory" and "archery accessory" are well known in the archery industry and to a person of ordinary skill in the art, [Doc. 62 at 25], this Court concludes that "accessory" needs no specific construction, but rather should be construed consistent with its plain

and ordinary meaning.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

> ### 2. "first portion configured to at least partially face in a forward direction"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| Ordinary meaning and not indefinite | Indefinite under 35 U.S.C. § 112(b) | **Not indefinite; plain and ordinary meaning** |

The phrase "first portion configured to at least partially face in a forward direction" appears in Claims 1, 9, 11, 17, 18, and 19.[5]  [Doc. 60 at 11].  Although the Parties identified this entire phrase as requiring construction, [*id.*], it is clear from the briefing that the material dispute arises over the term "first portion."  Hamskea contends that this term, like others that share the word "portion," is indefinite under 35 U.S.C. § 112(b).  [Doc. 61 at 22–23].  QAD disagrees, advocating for its plain and ordinary meaning.  [Doc. 62 at 26–27].

"[D]efiniteness is to be evaluated from the perspective of someone skilled in the relevant art."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 908 (2014).  As with claim construction generally, courts must read claims in light of the specification and prosecution history to assess definiteness.  *Id.*; *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010).  Thus, the Supreme Court held in *Nautilus* that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus*, 572 U.S. at 901.

---

[5] The method claims use essentially identical language to claim a method comprising, in part, "configuring a first portion to at least partially face in a forward direction."  [Doc. 80-1 at Cls. 18–19].

Hamskea argues that the term "first portion" does not appear anywhere in the specification of the '974 Patent, and every embodiment of the '974 Patent "shows the dovetail of the archery device as being monolithic (unitary) with the bow riser," so the specification does not provide clear notice of what is claimed. [Doc. 61 at 22]. In particular, because the dovetail of the archery device is unitary with the bow riser, Hamskea argues that there can be no "first portion." [*Id.* at 22–23]. Plaintiffs argue that the '974 Patent is entitled to a presumption of validity, and suggest that Hamskea has failed to carry its burden of establishing indefiniteness by clear and convincing evidence. [Doc. 62 at 28–29]. To support their contention that the phrase "first portion configured to at least partially face in a forward direction" is not indefinite, Plaintiffs rely on the Abstract and Figure 13 of the '974 Patent to define "the first portion" of the claimed archery device. [*Id.* at 27–28].

Hamskea cites no authority to support its argument that the term "first portion" is indefinite because it appears primarily, or even solely, within the claims of the '974 Patent. Indeed, it is well settled that claim construction begins with the words of the claim itself. *See Takeda Pharm. Co.*, 743 F.3d at 1363. And the Federal Circuit has repeatedly warned against restricting claim construction to the embodiments in a patent specification, because "persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *See Phillips*, 415 F.3d at 1323 (collecting cases).

Additionally, some courts have observed that they "must first attempt to determine what a claim means before [they] can determine whether the claim is invalid for indefiniteness." *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, No. 1:02-cv-00148-GMS,

2003 WL 124149, at *1 n.1 (D. Del. Jan. 13, 2003) (collecting cases).  Indeed, "district courts throughout the country have generally been reluctant to consider whether a patent is indefinite at the claim construction phase, rather than at the summary judgment phase." *DuraSystems Barriers Inc. v. Van-Packer Co.*, No. 1:19-cv-01388-SLD-JEH, 2021 WL 4037826, at *7 (C.D. Ill. Sept. 3, 2021) (quotation omitted); *Gilead Scis., Inc. v. Mylan Inc.*, No. 1:14-cv-00099, 2015 WL 1534067, at *2 (N.D. W. Va. Apr. 6, 2015) (collecting cases).[6]

With these principles in mind, this Court cannot conclude that Defendant has demonstrated that the term "first portion" is indefinite under 35 U.S.C. § 112(b).  The ordinary meaning of "portion," as used in the '974 Patent, is "a part or share of something larger."    *See,  e.g.*,  https://www.dictionary.cambridge.org/us/dictionary/english/portion (last visited Mar. 20, 2024).  The use of the modifier "first" does not require a particular location.  Rather, the remainder of the phrase and the other claim language indicates the configuration of this "first portion," i.e., to at least partially face in a forward direction toward an archery target.  Accordingly, this Court concludes, at least at this juncture, that the phrase "first portion configured to at least partially face in a forward direction," should be construed with its plain and ordinary meaning and is not indefinite.

---

[6] This Court notes that Hamskea did not raise an indefiniteness argument regarding "first portion configured to at least partially face in a forward direction toward an archery target" in its early request for summary judgment.  *See generally* [Doc. 28].  Indeed, Hamskea did not seem unable to define what the "first portion configured to at least partially face in a forward direction toward an archery target" meant, but rather argued that a prior art reference previously disclosed that element.  *See* [*id.* at 15–16].

### 3.   "second portion"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| A part of the archery device that at least partially faces in a rearward direction away from an archery target | Indefinite under 35 U.S.C. § 112(b) | **Not indefinite; plain and ordinary meaning** |

The term "second portion" appears in Claims 1, 5, 6, 9, 11, 17, 18, and 19 of the '974 Patent.  [Doc. 60 at 11].  For the same reasons as set forth above with respect to "first portion configured to at least partially face in a forward direction," this Court concludes that the term "second portion" should be construed with its plain and ordinary meaning and is not indefinite.  In so ruling, this Court specifically declines to adopt Plaintiffs' proffered construction that adds "at least partially faces in a rearward direction away from an archery target."  [Doc. 62 at 29–30].  To do so would impermissibly render other specific claim language superfluous.  *See Merck*, 395 F.3d at 1372.  That is because the '974 Patent already contains several references to "a second portion configured to at least partially face in a rearward direction away from the archery target."  *See, e.g.*, [Doc. 80-1 at Cls. 1, 9, 17].

### 4.   "protrusion"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| Something that protrudes from the second or rear portion of the archery device | Plain and ordinary meaning | **Plain and ordinary meaning** |

The term "protrusion" appears in Claims 1, 3, 6, 7, 9, 11, 13, 15, 17, 18, and 19 of the '974 Patent.  [Doc. 60 at 14].  Hamskea advocates for plain and ordinary meaning, [*id.*], but does not develop the argument at length within its briefing, *see generally* [Doc.

61]; *see also* [Doc. 63 at 3 ("With respect to 'protrusion,' the term should take on its ordinary meaning because QAD offers no intrinsic evidence to support its purported construction.")].   QAD argues that the term should be construed as "something that protrudes from the second or rear portion of the archery device."[7]   [Doc. 62 at 16].   In support of their proposed construction, Plaintiffs rely upon the dictionary definition of "protrusion" and urge this Court to deem any further argument from Hamskea waived. [*Id.*].

Read in the context of the entire claim limitation and specification, the term "protrusion" is not imbued with a further requirement of protruding from the second or rear portion of the archery device.   Thus, the Court respectfully concludes that the term "protrusion" carries its plain and ordinary meaning, i.e., something that protrudes.

### 5.   "the second portion comprises a protrusion"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| Ordinary meaning | A protrusion that constitutes an independent element separate and apart from the dovetail shape | **Plain and ordinary meaning** |

The phrase "the second portion comprises a protrusion" appears in Claims 1, 9, 11, 17, 18, and 19 of the '974 Patent.[8]   [Doc. 60 at 16].   The material dispute between the Parties is not the construction of the term, per se, but rather whether, as Hamskea

---

[7]   To the extent that they suggest the Court should simply adopt their proposed construction of the term "protrusion" because Hamskea failed to address the term in its Opening Claim Construction Brief, Plaintiffs cite no authority for the proposition that the Court should deem any objection by Hamskea waived or that any such waiver would change this Court's obligation to construe the claims of the Original Patents-in-Suit.   [Doc. 62 at 16].

[8]   The disputed phrase appears with an immaterial interpolation in Claim 1.   *See* [Doc. 80-1 at Cl. 1 ("the second portion comprises:  a dovetail shape; and a protrusion")].

contends, the second portion consists of "[a] protrusion that constitutes <u>an independent element separate and apart</u> from the dovetail shape."  [Doc. 61 at 6 (emphasis added)]. In making this argument, Hamskea focuses on the term "and," which separates the elements of "a dovetail shape" and "a protrusion configured to at least partially fit into a space defined by the bow accessory."  [*Id.* at 6–7; Doc. 80-1 at Cl. 1].  Hamskea relies heavily on the Federal Circuit's ruling in *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004), to argue that separately listed claim elements must constitute separate components.

QAD contends that Hamskea improperly attempts to read an additional limitation into Claim 1, and that the patent itself reflects that the claim may be satisfied by an element that is both a protrusion and dovetail shaped.  [Doc. 62 at 11–15].  Plaintiffs briefly distinguish *Gaus* as "involv[ing] claims directed to completely different technology and reciting two physical structures."  [*Id.* at 15].  Plaintiffs instead direct the Court's attention to *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.9[9] (Fed. Cir. 2006), and *Intellectual Property Development, Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1320 (Fed. Cir. 2003).

This Court does not read *Gaus* to pronounce a claim construction principle that requires the "protrusion" to be independent and distinct from the "dovetail shape," simply because both terms are used to describe the "second portion."  Indeed, *Gaus* announces no new principles of claim construction.  Instead, *Gaus*—which was decided two years prior to the seminal claim construction case of *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.

---

[9] While Plaintiffs cite to footnote 9 of the Federal Circuit's opinion in *Applied Medical*, [Doc. 62 at 15], it appears that the discussion to which they refer occurs in footnote 3 and there is no footnote 9 to the opinion.  *See Applied Med. Res. Corp.*, 448 F.3d at 1333 n.3.

Cir. 2005)—thoroughly analyzed the specific language of the claim and specification of the patent-in-suit to arrive at the conclusion that "the specification plainly describes the two components as separate." *Gaus*, 363 F.3d at 1288–90.  As with the other disputed terms, this Court must be guided by the claim construction principles discussed above.

Here, neither the claim language nor the specification plainly describes the "protrusion" and the "dovetail shape" as two distinct elements of the "second portion." Instead, a plain reading of independent Claim 1 only requires that the "second portion" be comprised of "a dovetail shape" and a "protrusion configured to at least partially fit into a space defined by the bow accessory."  [Doc. 80-1 at Cl. 1].  Read as a whole, nothing in the specification plainly describes the protrusion as distinct from the dovetail shape. Indeed, an embodiment of the second portion with a dovetail-shaped protrusion[10] is reflected in Figure 5a by **120**:



FIG. 5a

---

[10] The same identifier (**120**) is used to identify both the "rail" and "protrusion."  *See, e.g.*, [Doc. 80-1 at col. 3:30–36 (using "protrusion"); col. 4:7–10 (using "dovetail-shaped rail")].

[*Id.* at Fig. 5a (emphasis added)].  And although the doctrine of equivalents is not before the Court at this stage, Defendant does not point to—and this Court did not independently find—any clear disclaimer in the prosecution history of the '974 Patent that would require construing the second portion as comprising a dovetail shape independent and distinct from a protrusion.  *Cf. Gaus*, 363 F.3d at 1290–91.  Accordingly, this Court concludes that the phrase "the second portion comprises a protrusion" is appropriately construed as bearing its plain and ordinary meaning.

6.   **"the second portion comprises a first right edge, a first left edge, a second right edge, and a second left edge"**

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| Ordinary meaning | A first right edge, a first left edge, a second right edge, and a second left edge that constitute independent elements separate and apart from the protrusion and the dovetail shape | **Plain and ordinary meaning** |

The term "the second portion comprises a first right edge, a first left edge, a second right edge, and a second left edge" appears in Claims 5, 11, and 19 of the '974 Patent. [Doc. 60 at 16].  Based on its reasoning with respect to the construction of "the second portion comprises a protrusion," Hamskea argues that each edge constitutes an independent element "separate and apart from both the protrusion and the dovetail shape."  [Doc. 61 at 9–10].  For the reasons stated above, this Court concludes that nothing within the claim language, specification, or prosecution history of the '974 Patent requires that "a first right edge, a first left edge, a second right edge, and a second left edge" be distinct from the protrusion and dovetail shape.  *See supra*.  Accordingly, this

Court concludes that this phrase is appropriately construed by reference to its plain and ordinary meaning.

### 7.     "third portion"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| A part of the archery device configured to engage the second portion of the archery device | A portion which forms a unitary part of the archery device including the first and second portions | **Plain and ordinary meaning** |

The term "third portion" appears in Claims 1, 9, and 18 of the '974 Patent. [Doc. 60 at 19]. Specifically, independent Claim 1 recites "[a]n archery device useable with a bow accessory, the archery device comprising" a first portion, a second portion, and

> <u>a third portion</u> extending along a second vertical plane when the archery device is vertically oriented, wherein:
> the second vertical plane intersects with the first vertical plane; and
> <u>the third portion</u> defines an opening configured to receive a fastener so as to enable the fastener to extend along a lateral axis that intersects with the second vertical plane.

[Doc. 80-1 at Cl. 1 (emphasis added)]. Relying on Figure 4 of the '974 Patent, Hamskea argues that the claim language "requires that all three portions form the archery device." [Doc. 61 at 11 (emphasis omitted)]. QAD takes issue with Defendant's proposed construction requiring that the "third portion" forms a unitary part of the archery device. [Doc. 62 at 20]. Instead, Plaintiffs urge this Court to construe "third portion" as "[a] part of the archery device configured to engage the second portion of the archery device." [*Id.*].

It is clear—and apparently undisputed—that the "third portion" must be part of the archery device. *Compare* [Doc. 61 at 10–14], *with* [Doc. 62 at 20–21]. The use of the transitional term "comprising," *see, e.g.*, [Doc. 80-1 at col. 8:10], makes clear that the

archery device must include (but is not limited to) the claimed first, second, and third portions, *see CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356, 1360–61 (Fed. Cir. 2007) (discussing how, in the patent-claim context, "comprising" is understood to mean "including but not limited to," versus "consists," which conveys limitation and exclusion). The fact that the "third portion" is not disclosed in some claims of the '974 Patent, *see* [Doc. 62 at 20 n.9], does not change the fact that for Asserted Claims 1 or 9 to be infringed, the archery device must include a "third portion."  Thus, the operative questions include (1) whether the third portion must necessarily engage with the second portion of the archery device, and (2) whether the first, second, and third portions must be part of a "unitary" archery device.  To answer these questions, the Court remains guided by the general principles of claim construction and begins with the intrinsic evidence.

First, the claim language does not include the term "unitary."  *See* [Doc. 80-1 at Cls. 1, 9, 18].  Though left undefined by Hamskea, the plain meaning of "unitary" generally describes "a single, continuous structure."  *See Pass & Seymour, Inc. v. Int'l Trade Comm'n*, 617 F.3d 1319, 1324 (Fed. Cir. 2010).  But neither the claim language nor the specification expressly requires the first, second, and third portions of the archery device to compose a single, continuous structure.  The Federal Circuit "has repeatedly and clearly held that it will not read unstated limitations into claim language."  *See N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000).  As a result, this Court respectfully declines to adopt Hamskea's proposed construction, which would include limitations supported by neither the claim language nor the specification of the '974 Patent.  *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed.

Cir. 1999) ("General descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone.").

Second, QAD's proposed construction fares no better.  The remaining claim language with respect to the "third portion" discloses how the third portion is oriented with respect to a second vertical plane that intersects a first vertical plane, and how the third portion must define an opening to receive a fastener that extends along a lateral axis that intersects with the second vertical plane.  [Doc. 80-1 at Cl. 1].  It does not, however, require the third portion to be configured to engage with the second portion, as in Plaintiffs' proposed construction.  That stands in contrast with claim language that requires the protrusion of the second portion of the archery device to be configured to mate, i.e., engage, with the bow accessory—as opposed to the third portion of the archery device. *See* [*id.*].  And it is unclear to this Court how, or whether, the '974 Patent specification, *see* [Doc. 62 at 21], supports QAD's proffered construction that requires the third portion to engage with the second portion of the archery device.  If anything, Plaintiffs appear to be attempting to import a limitation from an embodiment of the claimed invention into the claim language itself—a practice that QAD acknowledges is improper.  *See* [*Id.* at 5 n.5 (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002))].  Accordingly, this Court concludes that "third portion" should be construed consistently with "first portion," and "second portion," by reference to its plain and ordinary meaning.

### 8.    "integral"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| Part of a structure composed of constituent parts | A monolithic or unitary part or portion of the bow riser that is indivisible from the bow riser | **Unitary** |

The term "integral" appears in Claims 2, 3, 10, 12, 13, and 20 of the '974 Patent. [Doc. 60 at 21].  For example, Claim 2 depends from independent Claim 1, and recites a limitation "wherein the archery device [of Claim 1] is an integral portion of a body of an archery bow."  [Doc. 80-1 at Cl. 2].  Claim 3 also depends from independent Claim 1, and further recites a limitation "wherein the protrusion is an integral part of a rearward facing portion of a bow riser."  [*Id.* at Cl. 3].  And dependent method Claim 20 describes a limitation "wherein the archery device is an integral portion of a body of an archery bow." [*Id.* at Cl. 20].  QAD's proposed construction of integral begins with a statement that:

> Preliminarily, whether "integral" means "monolithic"/"unitary" or "composed of constituent parts," there is nothing in Claim 1 (for example) that limits the "archery device" (Claim 2) or "protrusion" (Claim 3) to being integral or "non-integral" (as Hamskea describes it).  Claims 2 and 3 are dependent claims, and are where the term "integral" is found.  The doctrine of claim differentiation disfavors reading a limitation from a dependent claim into an independent claim.

[Doc. 62 at 22 (citations omitted)].  While the principle is correct, the Court respectfully notes that it is inapposite to the correct construction of the term "integral," which does not appear in Claim 1.  Nor is this Court persuaded that the term "integral" is properly construed by choosing the definition "composed of constituent parts" from the Merriam-Webster Dictionary, without regard to the language of the claims and specification of the '974 Patent.  [*Id.* at 23 (citing www.merriam-webster.com)].  Indeed, the Merriam-Webster Dictionary cited by Plaintiffs also contains the definitions of "essential to completeness," and "formed as a unit with another part."  *See Integral*, https://www.merriam-webster.com/dictionary/integral (last visited Mar. 22, 2024).

This Court looks to the intrinsic evidence to discern the proper construction of "integral."  *See Dow Chem. Co.*, 257 F.3d at 1372.  Claims 2 and 3 reveal that the term

"integral" is used in the '974 Patent as an adjective describing potentially different parts of an archery bow.  Claim 2 describes the claimed archery device as an "integral" part of a body of an archery bow.  [Doc. 80-1 at Cl. 2].  Claim 3 describes the claimed archery device's protrusion as an "integral" part of a rearward facing portion of a bow riser, i.e., a certain part of the archery bow.  [*Id.* at Cl. 3, col. 2:10–13 (describing the mount being configured to "a riser of an archery bow")].  The '974 Patent specification uses "integral" only once, to describe an embodiment where the accessory and the bow accessory coupler "can be a single, integral, monolithic object."  [*Id.* at col. 3:47–49].  This "integral" structure contrasts with the next example, where the bow accessory coupler can be removable from the accessory.  [*Id.* at col. 3:49–51].

This language in the claims and specification persuades this Court that "integral" should be construed as an adjective describing a particular relationship between two elements—but not limited to the bow riser, as urged by Defendant.  This is consistent with the term's use in the specification, where "integral" is synonymous with "single" or "monolithic," requiring a particular relationship between constituent parts.  Thus, this Court construes "integral" to mean "unitary."[11]  This construction is wholly consistent with the intrinsic evidence, the dictionary definitions, and other courts' constructions of "integral."  *See Otter Prods., LLC v. Treefrog Devs. Inc.*, No. 11-cv-02180-WJM-KMT, 2012 WL 4468211, at *30 (D. Colo. Sept. 27, 2012) (collecting cases).

---

[11] While this Court does not construe "integral" as used in the '974 Patent by looking to its use in the unrelated '884 Patent, the Court does note that the two Original Patents-in-Suit share Daniel A. Summers as an inventor and the same definition of a person of ordinary skill in the art for purposes of claim construction.  *Compare* [Doc. 80-1 at 2], *with* [Doc. 80-2 at 2].  Thus, this Court finds it instructive that the term "integral" is used in, and may be construed consistently across, the Original Patents-in-Suit.

B.    The '884 Patent

1.    "device moveably coupled to the mounting portion"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| Ordinary meaning | While the device exerts a tight compressive force on the mounting portion, the device is also moveable along the vertical axis relative to the mounting portion | **Plain and ordinary meaning, i.e., device moveably attached to the mounting portion** |

2.    "first engager"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| Ordinary meaning | A first engager is a clamp that exerts a tight, compressive and immoveable force on the mounting portion | **Plain and ordinary meaning** |

3.    "second engager"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction | Court Construction |
|---|---|---|
| Ordinary meaning | A second engager is a clamp that is moveable along the vertical axis relative to the first engager and the mounting portion that can also exert a final compressive force on the mounting portion | **Plain and ordinary meaning** |

The terms "device moveably coupled to the mounting portion," "first engager," and "second engager" appear in Claims 1, 12, and 19 of the '884 Patent.[12]  [Doc. 60 at 27–29].

---

[12] The asserted method claim employs materially identical language as the first disputed phrase to claim a method comprising, in part, configuring a "device to be moveably coupled to the mounting portion."  [Doc. 80-2 at Cl. 19].

Because Hamskea defines "device moveably coupled to the mounting portion" in relation with "first engager" and "second engager," *see* [Doc. 61 at 23–28], this Court discusses these three terms together.  Claim 1 of the '884 Patent discloses:

> An archery coupling assembly comprising:
>
> a mounting portion configured to be coupled to a riser of an archery bow, wherein the mounting portion is configured to be positioned in a vertical position in which the mounting portion extends along a vertical axis; and
> <u>a device moveably coupled to the mounting portion</u>, wherein the device comprises:
> a support portion configured to support an archery accessory;
> <u>a first engager</u> configured to engage a first part of the mounting portion; and
> <u>a second engager</u> configured to engage a second part of the mounting portion,
> wherein <u>the first and second engagers</u> are arranged to compress a section of the mounting portion located between the first and second engagers,
> wherein the device is configured to be moved along the vertical axis relative to the mounting portion while the device is coupled to the mounting portion positioned in the vertical position,
> wherein, when the device is coupled to the mounting portion, the mounting portion is coupled to the riser, and the support portion supports the archery accessory, the archery accessory moves relative to the riser along the vertical axis in response to a movement of the device relative to the mounting portion.

[Doc. 80-2 at Cl. 1 (emphasis added)].  Having agreed that the Court need not construe either "device" or "mounting portion,"[13] the dispute between the Parties regarding "device moveably coupled to the mounting portion," as well as "first engager" and "second engager," turns on the meaning of "moveably coupled."

---

[13] The Parties agree that the Court need not construe the terms "device" and "mounting portion."  [Doc. 70 at 2].  The Background section of the '884 Patent indicates that the inventions of the patent are directed to attaching archery accessories to archery bows. *See* [Doc. 80-2 at col. 1:15–51].  And many claims in the '884 Patent use "mounting portion" to refer to the part of the archery coupling assembly that attaches to the archery bow.  *See* [*id.* at Cls. 1–4, 8–9, 12–14, 17–20].  Indeed, the terms "mounting" and "coupling" both refer to attaching. *See, e.g.*, [*id.*, Abstract].

While QAD proposes that these terms be construed using their plain and ordinary meaning, [Doc. 60 at 27–30], Hamskea insists that "'[m]oveably coupled' is being used as a term of art in a mechanical field, which would not be appreciated by a lay person," [Doc. 61 at 28].  Hamskea argues that "[t]he manner in which the device is 'moveably coupled' is dictated by the operations of a 'first engager' and a 'second engager.'"  [*Id.* at 24].  To that end, Hamskea urges the Court to adopt a construction that requires the operation of two separate forces—one that provides the "coupling," or attachment, and one that allows the device to be "'moveable' relative to the mounting portion."  [*Id.*].  Defendant argues that the proper construction of "moveably coupled" requires that "[w]hile the device exerts a tight compressive force on the mounting portion, the device is also moveable along the vertical axis relative to the mounting portion," and that such operation precludes the ability for the "first engager" and the "second engager" to be made up of "a single clamp exerting a single force."  [*Id.* at 25–26 (emphasis omitted)].  In support, Hamskea cites to Figures 17–33 of the '884 Patent, as well as the specification. [*Id.*].

This Court is not persuaded by Hamskea's contention that these terms cannot be given their plain and ordinary meanings because they are "terms of art" in the mechanical field.  "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court."  *Markman*, 517 U.S. at 372.  To the extent that Hamskea suggests that QAD's construction would improperly defer to lay definitions, claim construction looks at a term's "plain and ordinary meaning as understood by a person of ordinary skill in the art."  *Stryker Corp.*, 837 F.3d at 1272 (citing *Phillips*, 415 F.3d at 1313). And this Court respectfully disagrees that the relevant "art" is a general "mechanical field."

As determined above, the "art" here is researching, designing, and/or developing archery bows and accessories.  *See supra*.

Even if "moveably coupled" is a particular term of art in the field of researching, designing, and/or developing archery bows and accessories, this Court is not persuaded that its specific meaning requires two separate forces.  As discussed above, patent terms are generally given their plain and ordinary meaning, except when (1) "a patentee sets out a definition and acts as his own lexicographer," or (2) "the patentee disavows the full scope of a claim term either in the specification or during prosecution."  *Thorner*, 669 F.3d at 1365.  Hamskea never argues that the patentees of the '884 Patent acted as their own lexicographers, expressly defined the term "moveably coupled" only in terms of engagers or to exclude a single clamp, or disavowed the full scope of these claim terms.  *See generally* [Doc. 61 at 23–28].  To the extent that Hamskea's argument is that a person of ordinary skill in the art would necessarily understand that "moveably coupled," as used in the '884 Patent, requires two separate forces, such contention is pure attorney argument, not moored in any expert testimony or prior art references involving the phrase "moveably coupled."  *Cf. Univ. of S. Fla. v. United States*, 146 Fed. Cl. 274, 294 (2019) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony." (quotation omitted)).

Following well-settled principles of claim construction, this Court looks first to the claims and specification of the '884 Patent.  Citing Claim 1, Hamskea argues that "the independent claims set out precisely what it means to be mov[e]ably coupled."  [Doc. 61 at 26].  While this Court does not necessarily disagree, it also finds that it need not imbue the term "moveably coupled" with additional limitations that are otherwise stated within

the claim itself.  *See Merck*, 395 F.3d at 1372.  This Court likewise respectfully declines to import limitations from the embodiments reflected in the specification.  *See Stumbo*, 508 F.3d at 1362.  Instead, this Court concludes that "moveably coupled" should be construed with its plain and ordinary meaning:  "moveably attached."  The additional limitations of Claims 1 and 12 set forth how the "first engager" and "second engager" must interact with the mounting portion.  And Claim 19 establishes how the engagers must interact with the mounting portion and each other.  The evidence does not suggest that these terms necessarily require two separate forces or exclude a single clamp.[14]  Thus, the Court finds that "device moveably coupled to the mounting portion," "first engager," and "second engager" do not require any specific construction.  Rather, they should be construed consistent with their plain and ordinary meaning.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1)    The Parties' Joint Motion for Determination of Claim Construction [Doc. 64] is **GRANTED**; and

(2)    The disputed claim terms of U.S. Patent No. 11,098,974 and U.S. Patent No. 11,359,884 are hereby **CONSTRUED** as set forth herein.

DATED: March 22, 2024                    BY THE COURT:

Nina Y. Wang
United States District Judge

---

[14] To the extent that Defendant invites this Court to construe the claim terms with an eye toward non-infringement, this Court respectfully declines.